GARY M. RESTAINO
United States Attorney
District of Arizona
MARGARET PERLMETER
Arizona State Bar No. 024805
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Margaret.Perlmeter@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>vs.<br><br>1.  Shane Killian Burns,<br><br>               Defendant. | CR-22-1507-01-PHX-SPL<br><br>**UNITED STATES' RESPONSE TO DEFENDANT BURNS' OBJECTIONS TO THE PRESENTENCE REPORT** |

The United States responds to Defendant Burns' Objections to the Presentence Report. ("PSR"). The United States concurs with most of Defendant's objections and respectfully requests the Court sustain and overrule the objections as further described below.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Summary of Facts**

This case involves Defendant selling methamphetamine to an undercover agent in June and July 2022. In April 2022, a confidential source ("CS") met with Defendant and negotiated the purchase of a small amount of methamphetamine. This event served as an introduction and rapport building event between the CS and Defendant that law enforcement hoped would result in future controlled purchases. (PSR ¶ 6.)

        a.    The June 21, 2022 Controlled Purchase

On June 20, 2022, the CS, introduced Defendant to the undercover agent "UC" at

the Talking Stick Resort and Casino in Scottsdale, Arizona. After some talk, Defendant agreed to sell up to five pounds of methamphetamine for $1,000.00 per pound. (PSR ¶ 7.) The next day, the UC arranged to purchase two pounds of methamphetamine for $2,000.00. (PSR ¶ 8.) Later that afternoon, Defendant met the UC at the Talking Stick Resort and Casino in Scottsdale, Arizona. Defendant was observed getting out of his car with a black bag and getting into the UCE's car. The UC gave $2,000.00 in cash to Defendant. After counting the money, Defendant left the UC's car and left the resort. Defendant sold 895.5 grams of methamphetamine to the UC, confirmed by laboratory testing. (PSR ¶ 8.)

      b. The July 19, 2022 Controlled Purchase

On July 19, 2022, Defendant and the UC negotiated the purchase of six pounds of methamphetamine and 7,500 fentanyl pills for $10,000.00. (PSR ¶ 9.) Defendant told the UCE that he would send his driver to the Talking Stick Resort and Casino that evening. (PSR ¶ 9.) Later that evening, the co-defendant, Christina Patacky-Beghin arrived at the casino, retrieved an unsealed box from the truck of her car, and got into the UC's car and exchanged the drugs for $10,000.00 cash. Defendant sold 2,687 grams of methamphetamine and 824 grams of fentanyl to the UC on this day, confirmed by laboratory testing. (PSR ¶ 8.)

**II. Plea Agreement**

On or about November 22, 2023, Defendant pleaded guilty to the lesser included offense of Count 1 in the indictment, Conspiracy to Possess with Intent to Distribute a Detectable Amount of Methamphetamine and Fentanyl, Schedule II Controlled Substances, in violation of Title 21, United States Code Sections 846, 841(a)(1) and (b)(1)(C). (Doc. 58.). In the factual basis of the plea agreement, Defendant admitted delivering 895.5 grams of methamphetamine to the UC on June 21, 2022 for $2,000, and asking his co-defendant to deliver 2,687 grams of methamphetamine and 824 grams of fentanyl to the UC for $10,000. *Id.*

**III.     Stash House – U.S.S.G. § 2D1.1(b)(12)**

An increase of two levels is applied if a defendant maintains a premises for the purpose of manufacturing or distributing a controlled substance. U.S.S.G. § 2D1.1(b)(12). The PSR assigns this specific offense characteristic to Defendant. (PSR ¶ 22.)  Defendant objects to this finding, stating that the home was Defendant and his girlfriend's primary residence, and that any drug purpose use was merely a convenience and nothing more. (Def. Mot. at 4.)  Defendant also points out that the date of the search in October 2022 was beyond the scope of the charged conspiracy in this case, which traversed the dates April 1, 2022 through July 19, 2022. *Id.*  The United States concurs with Defendant's position.

Among the factors to be considered in whether this enhancement should be applied includes whether the defendant "maintained" the premises – whether it be a possessory interest like owning or renting the premises and the extent to which the defendant controlled access to, or activities at the premises. App'n 17. The application note further explains that maintaining or distributing a controlled substance must be one of the defendant's primary or principal uses for the premises, although it need not be the sole purpose.  In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes. *Id.*

Here, the PSR and Defendant's objections address two different apartments that Defendant lived in. Defendant's first apartment (Apt #1) was searched by the DEA in October 2022, in a separate investigation, unrelated to the instant case.  At that time, Defendant was in the process of moving. The second apartment (Apt #2) was searched by federal agents in November 2022, when Defendant was arrested. (PSR ¶ 10.)  It is unclear to the United States which apartment was assessed as the purported stash house; the PSR references the November 2022 search, which would be Apt #2, while Defendant's objection references the October search, which would be Apt #1.  (PSR ¶ 11; Def. Mot. at

4.) The United States believes the sentencing enhancement is not applicable to either apartment.

Defendant and his girlfriend, the co-defendant, lived in both apartments. Defendant was not the owner or lessee of either apartment but did appear to have the freedom to come and go as he pleased. When Apt #1 was searched, agents found in documents showing that Defendant lived in the apartment. In Apt #2, in addition to the currency, scales, money counting machines, and packaging materials noted in PSR ¶ 11, there was also clothing, bedding, furniture, and toiletries in the apartment.

In *United States v. Jones,* 538 F. App'x 694, 696-97 (9th Cir. 2014), the Ninth Circuit affirmed a two-level enhancement for maintaining a drug premises under U.S.S.G. § 2D1.1(b)(12). In *Jones*, the enhancement was supported by evidence of large amounts of cash in the home, drug manufacturing residue in the kitchen drain, three documented sales of drugs by Jones out of the home and Jones having no other gainful employment. *Id.* at 697. In *United States v. Job*, 871 F.3d 852, 858 (9th Cir. 2017), the same two-level enhancement was similarly affirmed because Job had methamphetamine, marijuana, Spice, drug paraphernalia, a portion of the apartment was contaminated with methamphetamine residue, and an invoice for a test tube, boiler and an Erlenmeyer flask was found in the apartment. Here, there is insufficient evidence to conclude that the primary or principal purpose of either Apt #1 or Apt #2 was to maintain the premises as a distribution or manufacturing site for controlled substances. While there may have been indicia of drug activity or proceeds of drug sales in Apt #2, it is not sufficient to support a finding that drug distribution was the primary purpose of the home. Finally, as defendant points out, the dates the apartments were searched are outside the scope of the charged conspiracy, which traverses the dates of April 1 through July 22, 2022. The Court should sustain Defendant's objection.

**IV.    Role in the Offense - U.S.S.G. § 3B1.1(c)**

Defendant objects to the PSR's finding that he was a manager or supervisor in criminal activity. (PSR ¶ 24; Def. Mot. at 2.) The PSR finds Defendant to be a manager

or supervisor because he has a greater understanding of drug trafficking organizations, arranged the importation of methamphetamine and fentanyl in Mexico, delivered the drugs throughout the United States within an established network, and recruited and directed his co-defendant to deliver drugs on at least ten occasions. (PSR ¶ 24.)

Defendant is a member of two different drug conspiracies, the one in this case and the one that is pending in the Middle District of Pennsylvania. The conspiracy in the instant case is a limited one, taking place from April – July 2022, revolving around Defendant's introduction to and interaction with the UC and the two controlled purchases that resulted. Defendant delivered the drugs to the UC on the first controlled purchase and asked his girlfriend and co-defendant to make the delivery for the second, as he was unavailable. Defendant admitted importing the drugs from Mexico and has stipulated to that conduct in the plea agreement. (Doc. 58.). The PSR's further findings that Defendant delivered throughout the United States within an established network is beyond the scope of the charged conspiracy in this case. It may be related to the conspiracy charged by the USAO in the Middle District of Pennsylvania. The co-defendant's delivering drugs on at least ten occasions is conduct that expands beyond the instant conspiracy. It is also likely part of the conduct involved in the Pennsylvania conspiracy as she made only one delivery in the instant case for the Arizona conspiracy.

In *United States v. Mares-Molina*, 913 F.2d 770, 773 (9th Cir. 1990), the Ninth Circuit held there was insufficient evidence to justify a finding that Mares was an organizer, leader, manager, or supervisor in the conspiracy to import cocaine. Mares was loaned money by a drug trafficker to establish his business and turned a blind eye to the drug trafficking organization's use of the business as a stash house. *Id.* at 772. The Ninth Circuit reversed the district court holding that it could not conclude that Mares organized or controlled his co-conspirators within the meaning of section 3B1.1(c) merely because he was the owner of the trucking business which leased the warehouse in which the cocaine was off-loaded. *Id*. at 774. The facts in this case reveal a much simpler conspiracy and one with fewer members than that in *Mares-Molina.* The instant conspiracy involves

1 Defendant sourcing his drugs from Mexico and distributing them to a drug customer in
2 Phoenix, Arizona, who Defendant now knows was an UC. His girlfriend and co-defendant
3 assisted in furthering the conspiracy by making the second delivery to the UC because
4 Defendant was unavailable. Defendant lived with his co-defendant girlfriend. The facts
5 of the Arizona conspiracy here, are not sufficient to support a finding that Defendant
6 managed or supervised his co-defendant girlfriend in this conspiracy. He did not recruit
7 her to work, she was not his employee, he did not supervise her criminal activity, as it
8 pertains to this case. The Court should sustain Defendant's objection.

**V.  Safety Valve**

Defendant objects to the PSR's finding that he does not qualify for safety valve relief. (Def. Mot. at 4.) If the Court sustains Defendant's objection regarding role in the offense and finds Defendant to be an average participant, then Defendant will have met the five prongs to qualify for safety valve relief. U.S.S.G. § 5C1.2.

**VI.  Initial Drug Buy**

Defendant objects to the PSR's reference of 92.7 grams of methamphetamine. (PSR ¶ 6.). In April 2022, Defendant and the CS negotiated the sale of 2 ounces of methamphetamine for $300. *Id.* After the sale, the CS provided the substance to the investigators, which had a weight of 92.7 grams. *Id.* Defendant argues this is incorrect because 2 ounces is approximately 56 grams. (Def. Mot. at 2.) This information comes from the reports and is likely a weight that includes packaging. Although this transaction is not specifically included in the factual basis of the plea agreement, probation finds this transaction to be relevant conduct. Its inclusion does not affect the overall guidelines calculations. Thus, Defendant's objection should be overruled.

**VII.  Advisory Sentencing Guidelines**

If the Court sustains the objections as stated above, the United States believes Defendant's advisory guidelines range would be as follows.

| | |
|---|---|
| Base Offense Level: | 36 |
| Importation 2D1.1(b)(5): | +2 |

| | | |
|---|---|---|
| Safety Valve: | -2 | |
| Acceptance: | -3 | |
| Total Offense Level: | 33; CHC III | |
| Advisory Guidelines Range: | 168-210 months | |

## VIII. Conclusion

Based on the foregoing, the United States concurs with most of Defendant's objections to the PSR and respectfully requests the Defendant's objections be sustained and overruled as discussed above.

Respectfully submitted this 14th day of March, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Margaret Perlmeter*
MARGARET PERLMETER
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2024 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant: Lawrence I. Kazan

*/s/Beth Hojnacki*
U.S. Attorney's Office